1  HENRY D. GRADSTEIN, ESQ., STATE BAR NO. 89747
2  STEPHEN D. ROTHSCHILD, ESQ., STATE BAR NO. 132514
   KING, HOLMES, PATERNO & SORIANO, LLP
3  1900 AVENUE OF THE STARS, 25TH FLOOR
   LOS ANGELES, CALIFORNIA 90067-4506
4  TELEPHONE: (310) 282-8989
   HGradstein@khpslaw.com
5  SRothschild@khpslaw.com
6
   Attorneys for Plaintiff
7  WASHOUTPAN.COM, LLC
8
9              UNITED STATES DISTRICT COURT
10    CENTRAL DISTRICT OF CALIFORNIA – WESTERN DIVISION

11 | WASHOUTPAN.COM, LLC, a | CASE NO.  2:19-cv-00494-AB-JEM
   | California limited liability company |
12 |  | **SECOND AMENDED COMPLAINT**
   | Plaintiff, | **FOR DAMAGES AND**
13 |  | **INJUNCTIVE RELIEF FOR:**
14 | vs. |
   |  | (1) **FEDERAL PASSING OFF [15**
   |  |     **U.S.C. § 1125(a)];**
15 | HD SUPPLY CONSTRUCTION | (2) **FEDERAL FALSE**
   | SUPPLY, LTD., a Florida limited |     **ADVERTISING [15 U.S.C. §**
16 | partnership; and DOES 1-10, inclusive, |     **1125(a)];**
   | Defendants. | (3) **TRADE DRESS**
17 |  |     **INFRINGEMENT [15 U.S.C. §**
   |  |     **1125(a)];**
18 |  | (4) **CALIFORNIA UNFAIR**
   |  |     **COMPETITION [CAL. BUS. &**
19 |  |     **PROF. CODE § 17200];**
   |  | (5) **CALIFORNIA UNFAIR**
20 |  |     **COMPETITION [CAL. BUS. &**
   |  |     **PROF. CODE § 17500];**
21 |  | (6) **COMMON LAW UNFAIR**
   |  |     **COMPETITION;**
22 |  | (7) **COMMON LAW**
   |  |     **TRADEMARK**
23 |  |     **INFRINGEMENT;**
   |  | (8) **COMMON LAW TRADE**
24 |  |     **DRESS INFRINGEMENT.**
25 |  | **DEMAND FOR JURY TRIAL**
26 |  |
27 | / / / |
28 | / / / |

5295.060/1489399.1

SECOND AMENDED COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF

Plaintiff, for its Second Amended Complaint, alleges as follows:

## INTRODUCTION

1.     Plaintiff Washoutpan.com, LLC ("WP" or "Plaintiff") has been a leader in the concrete containment pan industry since 2004.  WP began a business relationship with Defendant HD Supply Construction Supply, LTD., d/b/a HD Supply Construction & Industrial – White Cap, ("HDS" or "Defendant") at the end of 2012, where WP began supplying its Washout Pan concrete containment pan products to HDS.  WP entered into an agreement in 2013 for WP to continue supplying its Washout Pan products to HDS.  The agreement terminated February 2018.

2.     HDS has since been manufacturing, or instructing one or more parties to manufacture, and selling, concrete containment pans imitating the complete Washout Pan product line, including WP's trade dress in the PRO line pans.  The imitation pans have the identical dimensions and color as the Washout Pan products and have mirrored affixed metal identification plates displaying each of the Washout Pan original product numbers, specifications, and serial numbers positioned on the pans identically to the Washout Pan identification plates.  HDS has advertised the imitation pans using the WASHOUT PAN trademark and photographs, product numbers, product statistics, safety data, and engineering calculation packets of WP's Washout Pan products.

3.     WP seeks damages and injunctive relief in this action.

## THE PARTIES

4.     WP is a limited liability company duly organized and existing under the laws of the State of California, with its principal place of business located at 5330 Alta Bahia Court, San Diego, California  92109.

5.     On information and belief, Defendant HD Supply Construction Supply, LTD., d/b/a HD Supply Construction & Industrial – White Cap, ("HDS" or "Defendant") is a limited partnership duly organized and existing under the laws of

1  the State of Florida, with its principal place of business located at 3100 Cumberland

2  Boulevard, Suite 1700, Atlanta, Georgia 30339.

3       6.    Plaintiff does not know the true names and capacities, whether

4  individual, corporate, associate, or otherwise, of the defendants named herein as

5  DOES 1 through 10, inclusive.  Plaintiff therefore sues them by use of fictitious

6  names.  Plaintiff is informed and believes that Doe Defendants 1 through 10 are

7  affiliated in some manner with HDS and have direct, contributory, or vicarious

8  responsibility for the wrongful acts as alleged herein.  Plaintiff will amend this

9  Complaint appropriately once the true names and capacities of Doe Defendants 1

10  through 10 are learned.  As used below, the term "Defendants" shall collectively

11  refer to the named defendant HDS together with the defendants identified as DOES

12  1 through 10.

13       7.    On information and belief, at all times herein mentioned, each of the

14  Defendants was the agent of each of the remaining Defendants, and in doing the

15  things alleged herein, was acting within the scope of such agency.  On information

16  and belief, the conduct of each of the Defendants as alleged herein was ratified by

17  each of the other Defendants, and the benefits thereof were accepted by each of the

18  other Defendants.

19       8.    On information and belief, each of the Defendants induced the other

20  Defendants to infringe upon Plaintiff's rights, participated in, and enabled the other

21  Defendants to engage in the conduct herein alleged, or supervised that conduct, with

22  knowledge that the conduct of other Defendants would infringe upon Plaintiff's

23  rights, and constitute unfair competition and false and deceptive actions.  Therefore

24  each of the Defendants is jointly and severally liable as a contributory or vicarious

25  infringer of Plaintiff's rights.

26                      **JURISDICTION AND VENUE**

27       9.    This action arises under the Lanham Act.  The Complaint states claims

28  for federal unfair competition under Section 43(a) of the Lanham Act (15 U.S.C. §

KING, HOLMES, PATERNO & SORIANO, LLP

SECOND AMENDED COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF

1125(a)); California unfair competition under Cal. Bus. & Prof. Code §§ 17200 and
17500; unfair competition under the common law; and trademark and trade dress
infringement under the common law.

10. This Court has subject matter jurisdiction over this action pursuant to
28 U.S.C. §§ 1331 and 1338 and 15 U.S.C. § 1121. This Court has pendent and
supplemental jurisdiction over the state law claims pursuant to 28 U.S.C. § 1338(b)
and 1367(a).

11. This Court has personal jurisdiction over Defendants because on
information and belief it has committed one or more of the infringing acts and acts
of unfair competition complained of herein in California and in this district, on
information and belief it has one or more stores located in California and in this
district, and on information and belief it does regular business in California and in
this district. This Court has personal jurisdiction over Defendants because, among
other things, Defendants conduct business in the State of California and in this
judicial district and thus enjoy the privileges and protections of California law.

12. Venue in this Court is proper at least under the provisions of 28 U.S.C.
§§ 1391.

## FACTS

13. Washoutpan.com, LLC was founded in 2004 under its current name
and is an industry leader in manufacturing industrial containment products. WP's
products are compliant with regulatory requirements established by local
governments and the US government under Occupational Safety and Health
Administration (OSHA); Environmental Protection Agency (EPA); Stormwater
Pollution Prevention Plan (SWPPP); Spill Prevention, Control, and Countermeasure
(SPCC); and National Pollutant Discharge Elimination System (NPDES).

14. WP's Washout Pan product line consists of concrete containment pans
used to receive and contain liquid concrete waste from concrete pumps and ready
mix trucks. The Washout Pans are reusable and do not contaminate the loads they

KING, HOLMES,
PATERNO &
SORIANO, LLP

SECOND AMENDED COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF

1  hold, allowing all materials to be recycled.  The Washout Pans also do not require
2  the contained material to set prior to transport, thereby allowing immediate
3  relocation.  Since its establishment in 2004, WP has publicly and continuously used
4  in interstate commerce the WASHOUT PAN trademark (the "Mark") throughout the
5  US and Canada in association with its industrial containment products.

6      15.     WP's Mark is an inherently distinctive, strong mark.  On information
7  and belief, to the extent its use in association with WP's goods has at any point not
8  been inherently distinctive, WP's use of the Mark throughout the US in connection
9  with its goods over time cause it, prior to HDS's infringing acts, to acquire
10  secondary meaning that served to distinguish the Mark in the minds of relevant
11  consumers as an indicator of the origin or source of goods associates with them.  On
12  information and belief, WP has common law trademark rights in its Mark
13  throughout California and the rest of the US.

14      16.     WP's Washout Pans include a PRO line with concrete containment
15  pans 727214PRO 72" x 72" x 14" PRO Pan, 727224PRO 72" x 72" x 24" PRO Pan,
16  509614PRO 50" x 96" x 14" PRO Pan, 509618PRO 50" x 96" x 18" PRO Pan,
17  604814PRO 60" x 48" x 14" PRO Pan.  The overall appearance of WP's pans in the
18  PRO line, including the appearance of the rolling floor and the fifth D ring, is
19  inherently distinctive.  On information and belief, to the extent the overall
20  appearance of WP's pans in the PRO line has at any point not been inherently
21  distinctive, WP's overall appearance of the PRO line pans displayed throughout the
22  US in connection with its goods over time cause it, prior to HDS's infringing acts, to
23  acquire secondary meaning that served to distinguish the appearance of the PRO line
24  pans in the minds of relevant consumers as an indicator of the origin or source of the
25  pans.  On information and belief, the features of PRO line pans which cause their
26  overall appearance to be distinctive, including the rolling floor and the fifth D ring,
27  are not functional.  On information and belief, WP has common law trade dress
28  rights in the PRO line pans throughout California and the rest of the US.  A true and

1  correct copy of images of pans from WP's PRO line showing the rolling floor and
2  fifth D ring is attached hereto as Exhibit "A."

3      17.    On or around October 2012, WP and HDS began discussions of HDS
4  potentially selling WP's Washout Pans.  HDS sold WP's Washout Pans on or
5  around December 2, 2013.

6      18.    WP and HDS entered into a Supplier Buyer Agreement for HDS to
7  distribute WP's Washout Pan products with a start date of January 1, 2014.

8      19.    In January 2014, WP created a video and high resolution photographs
9  of Washout Pan products with HDS's Brigade label.  WP created, paid for, and
10  provided all marketing content for the Washout Pan products, including printed
11  brochures, displays, and sample products.

12     20.    On December 4, 2014, HDS requested that WP send photographs of
13  Washout Pan products that would be displayed at the World of Concrete tradeshow
14  on February 3-6, 2015.  HDS specifically requested that WP share with HDS
15  lifestyle application images of the products in use.  WP sent HDS high resolution
16  photographs by WP of WP's products including the 8414PRO, 8418PRO,
17  5414PRO, 6614PRO, and 6624PRO, which WP had already renamed the products
18  to 509614PRO, 509618PRO, 604814PRO, 727214PRO, 727224PRO, 727214HD,
19  and 727224HD, respectively.

20     21.    On or around December 15, 2014, a sticker to be placed on the
21  Washout Pan products was finalized by HDS including the words "BRIGADE FOR
22  PROS CONCRETE WASHOUT PAN" and "WhiteCap.com".

23     22.    On June 11, 2015, WP sent HDS updated specification sheets of the
24  Washout Pan product line.  On June 16, 2015, HDS requested that WP send a video
25  and data sheets created by WP of the Washout Pan products.  WP sent HDS the
26  2015 catalogue for WP's products.

27     23.    On January 8, 2016, HDS informed WP that it would like to change the
28  current Brigade label on the sticker that is placed on WP's pans to a HDS White Cap

KING, HOLMES,
PATERNO &
SORIANO, LLP

1  logo.  WP suggested the sticker further be updated to include the statement "SPRAY

2  INTERIOR WITH RELEASE AGENT/FORM OIL BEFORE EACH USE.

3  INSPECT ALL WELDS PRIOR TO LIFTING. DO NOT USE IF DAMAGED."

4  An updated sticker including the HDS White Cap logo and the statement was

5  finalized on or around January 15, 2016 to be placed on WP pans for HDS.

6      24.    On or around November 2016, WP stopped selling and marketing the

7  Washout Pan 300 Gallon Tool Washout Station product 484241PRO and repeatedly

8  informed HDS to remove this product from all sales and marketing materials, but

9  HDS failed to do so.

10      25.    Effective February 7, 2018, WP and HDS entered into a Confidential

11  Settlement Agreement and Release, which ended their Supplier Buyer Agreement.

12      26.    On information and belief, HDS contacted WP to obtain Washout Pan

13  products' engineering calculation packets under the disguise of consumers for the

14  purpose of using the information to create and/or sell imitation pans.

15      27.    WP had the engineering company Devco Engineering Inc. calculate the

16  structural designs of the Washout Pan products and draft OSHA safety calculation

17  packets for WP that were unique to the Washout Pan products.  On information and

18  belief, HDS contacted the manufacturing company WP used for manufacturing the

19  Washout Pan products, Consolidated Fabricators, Corp., which had possession of

20  the packets per WP's authorization.  On information and belief, HDS received the

21  packets by pretending to be authorized to receive the information.  HDS did not

22  have WP's authorization or consent to receive the packets.

23      28.    As early as February 2018, HDS began selling concrete containment

24  pans and lids imitating WP's Washout Pan products and using WP's photographs of

25  Washout Pan products without authorization or consent on HDS's website, in

26  catalogues, and as paid keyword targeted Google Adwords for the sale of the

27  imitation pans.  A true and correct copy of HDS's unauthorized use of WP's

28  photographs in HDS's e-catalogue is attached hereto as Exhibit "B."  A true and

1 correct copy of HDS's unauthorized use of WP's photograph on HDS's website is
2 attached hereto as Exhibit "C." A true and correct copy of HDS's unauthorized use
3 of WP's lifestyle images of Washout Pan products owned by WP is attached hereto
4 as Exhibit "D." A true and correct copy of HDS's unauthorized use of WP's
5 photographs in an advertisement is attached hereto as Exhibit "E". A true and
6 correct copy of HDS' unauthorized use of WP's photographs in HDS' hard copy
7 catalogue is attached hereto as Exhibit "F."

8     29. On information and belief, HDS manufactured, or instructed one or
9 more parties to manufacture, the imitation pans based at least partially on
10 specifications for the Washout Pan products that HDS obtained.

11     30. The pans imitating WP's PRO line pans infringe on WP's trade dress in
12 the PRO line pans, including the rolling floor and the fifth D ring.

13     31. Because the pans imitating the appearance of WP's PRO line of pans
14 imitate WP's trade dress including the rolling floor and the fifth "D" ring, the
15 relevant public is likely to identify Defendants' concrete containment pans as those
16 from Plaintiff, or to believe or be confused as to whether Plaintiff has some
17 connection or association with Defendants' goods.

18     32. HDS passed off the imitation pans as authentic Washout Pan products,
19 including in the Central District of California, by advertising and marking the
20 imitation pans with the product numbers, product statistics, safety data, engineering
21 calculation packets, and countries of origin of the Washout Pan products. The
22 imitation pans included imitations of WP's 727214PRO 72" x 72" x 14" PRO Pan,
23 727224PRO 72" x 72" x 24" PRO Pan, 509614PRO 50" x 96" x 14" PRO Pan,
24 509618PRO 50" x 96" x 18" PRO Pan, 604814PRO 60" x 48" x 14" PRO Pan,
25 727214HD 72" x 72" x 14" HD Pan, 727224HD 72" x 72" x 24" HD Pan,
26 watertight lid 50 x 96, and watertight lid 72 x 72. HDS also passed off an imitation
27 of the 484241PRO 300 Gallon Tool Washout Station product that WP sold until
28 around November 2016.

KING, HOLMES,
PATERNO &
SORIANO, LLP

33.     On information and belief, HDS used WP's original product numbers for the imitation pans and WP's original product numbers with "444" added to the beginning to signify, including to buyers in the Central District of California, that WP's pans that were sold by HDS, for example 444727214PRO for WP's product 727214PRO.

34.     For the imitation pans, HDS listed manufacturing numbers identical to WP's product numbers, as shown in Exhibit "C."

35.     HDS included WP's trademark WASHOUT PAN in the names of the imitation pans, such as 'Brigade Concrete Washout Pan 72" x 72" x 24"'. Exhibit "B" shows HDS naming all of the imitation pans as "WASHOUT PANS".

36.     HDS's use of WP's Mark has caused or is likely to cause confusion, and/or to cause mistake, or to deceive as to the affiliation, connection, and/or association of Defendants with Plaintiff, or as to the origin, sponsorship, or approval of Defendants' goods.  Defendants' conduct as alleged above, through commercial advertising and promotion, including in the Central District of California, has misrepresented the origin of HDS's goods.

37.     HDS advertised the imitation pans, including in the Central District of California, with the same product specifications for the Washout Pans, including the weight of the Washout Pans and the maximum weight capacity of the Washout Pans.  On information and belief, the imitation pans weigh over one hundred pounds less than the corresponding Washout Pans, and the imitation pans use significantly less steel.  On information and belief, HDS sells imitation pans, including in the Central District of California, with false statements of the pans' weights.  On information and belief, HDS has sold and continues to sell imitation pans with false statements of the pans' maximum weight capacity.  HDS' false advertising is alleged with further specificity in paragraphs 69-79, below, which are incorporated into this paragraph by reference.

38.     The imitation pans are of the identical dimensions and color as the

Washout Pan products.  The imitation pans also have mirrored affixed metal identification plates displaying each of the Washout Pan original product numbers, specifications, and serial numbers positioned on the pans identically to the Washout Pan identification plates.

39.   On information and belief, the imitation pans contain lifting "D" rings that are not marked with weight ratings.

40.   On information and belief, the imitation pans that HDS has sold and continues to sell, including in the Central District of California, are falsely marked with the country of origin being USA.  On information and belief, the country of origin for the imitation pans is South Korea or China.

41.   On information and belief, the imitation pans are made differently than the Washout Pans and harm WP's reputation in the market based upon consumer confusion of the source of the imitation pans.  On information and belief, the imitation pans are not OSHA compliant.  The imitation pans are made with substantially less steel than the Washout Pans and are marketed and sold with listed weights that mirror the Washout Pan specification.  On information and belief, the imitation pans do not use weight rated "D" rings or else the marked weight ratings have been removed from the "D" rings and painted over to disguise the weight ratings.  The imitation pans have an open and hollow three-sided headrail, whereas Washout Pans do not have an open and hollow three-sided headrail.  The imitation pans have visible large gaps where the rigging connections and the three-sided headrail are welded together, whereas the Washout Pans do not have such gaps.

42.   On May 1, 2018, WP demanded in writing that HDS immediately cease and desist from possessing, controlling, or using descriptions of operation or other technical descriptions and design specifications of the Washout Pan products.  WP reminded HDS on November 13, 2018 of its demands to cease and desist.

43.   On August 24, 2018, WP confronted HDS in writing about HDS's continued marketing of WP's Washout Pans and WP's photographs, engineering

1 specifications, load testing data, and engineering calculation packets for the sale of

2 imitation pans from another supplier.

3     44.    WP emailed HDS on October 18, 2018 about HDS's use, without

4 authorization, of WP's photographs and product data on HDS's website and

5 catalogues for the sale of imitation pans because HDS's use had not stopped.

6     45.    WP purchased three imitation pans from HDS between September 18,

7 2018 and November 13, 2018. One of the shipments of the imitation pans included

8 an engineering calculation packet detailing specifications of a Washout Out product

9 by Devco Engineering Inc. The imitation pans included metal identification plates

10 displaying each of the Washout Pan product specifications and original product

11 numbers including 604814PRO, 727214PRO, 727224PRO, 509618PRO,

12 509614PRO, 727214HD, and 727224HD, with the plates positioned on the pans

13 identically to the Washout Pan identification plates. On information and belief, on

14 December 21, 2018, HDS attempted to retrieve at least one of the imitation pans WP

15 had purchased from WP's premises without WP's authorization or consent.

16     46.    WP and Defendants are business competitors as they both provide

17 concrete containment pans in shared geographical regions, including throughout

18 California, including in the Central District of California.

19     47.    On information and belief, Amazon.com removed Washout Pan

20 products from its website because of lower prices listed for the imitation pans on

21 another website and Amazon.com's belief that the Washout Pan products and the

22 imitation pans were comparable.

23     48.    Ram Tool Construction Supply Co. ("Ram Tool") and WP agreed upon

24 stock orders of Washout Pan products for multiple branches of Ram Tool. On

25 information and belief, Ram Tool did not make the agreed orders with WP because

26 of lower pricing being offered by HDS for the imitation pans, which Ram Tool

27 believed to be Washout Pan products.

28     49.    HDS branches across the US contacted WP on numerous occasions

KING, HOLMES,
PATERNO &
SORIANO, LLP

SECOND AMENDED COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF

after February 2018, inquiring about ordering Washout Pan products, but no orders were received by WP.  On information and belief, HDS employees explained to WP that the branches ordered products from another manufacturer.

50.    On information and believe, concrete companies told WP that they purchased what they believed to be Washout Pans from HDS because the cost was less than buying directly from WP.

51.    On information and belief, one or more HDS employees informed WP that the HDS office in Atlanta, Georgia had copied the Washout Pan products and was working with a company located close to HDS headquarters.

52.    On information and belief, WP's photograph of the Washout Pan watertight lid was used by HDS for the advertising and promotion of the imitation lids of various sizes, including watertight lids 50 x 96 and 72 x 72.

## FIRST CAUSE OF ACTION

### (Federal Passing Off; against all Defendants; 15 U.S.C. § 1125(a))

53.    Plaintiff realleges and incorporates by reference the full text of all of the foregoing numbered paragraphs as though fully set forth herein.

54.    Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a), prohibits, inter alia, the use by a person of any word, term, name, symbol, or device, or any combination thereof, or any false or misleading designation of origin or representation in connection with the offering for sale and sale of goods which is likely to cause confusion, mistake, or deception as to the affiliation, connection, or association of such person with another person, or which is likely to cause confusion, mistake, or deception as to the origin, source, sponsorship, or approval of such goods.

55.    In connection with the sale of and as part of the names for the concrete containment pans, watertight lids, and tool washout station imitating WP's Washout Pan products and the 300 Gallon Tool Washout Station that WP used to sell, HDS has used WP's trademark WASHOUT PAN, such as in 'Brigade Concrete Washout

1  Pan 72" x 72" x 24"' and as a header "WASHOUT PANS" to listed imitation pans.

2  56.   HDS's use of WP's Mark has caused or is likely to cause confusion,

3  and/or to cause mistake, or to deceive as to the affiliation, connection, and/or

4  association of Defendants with Plaintiff, or as to the origin, sponsorship, or approval

5  of Defendants' goods.  Defendants' conduct as alleged above, through commercial

6  advertising and promotion, has misrepresented the origin of HDS's goods.

7  57.   In connection with the sale of the concrete containment pans imitating

8  WP's Washout Pan products, including in the Central District of California, HDS

9  has used photographs, product numbers, product statistics, safety data, engineering

10  calculation packets, and countries of origin of the Washout Pan products.  The

11  imitation pans, lids, and station are the identical dimensions and color as the

12  Washout Pan products.  The imitation pans also have mirrored affixed metal

13  identification plates displaying each of the Washout Pan original product numbers,

14  specifications, and serial numbers positioned on the pans identically to the Washout

15  Pan identification plates.

16  58.   HDS's conduct as alleged above has caused or is likely to cause

17  confusion, and/or to cause mistake, or to deceive as to the affiliation, connection,

18  and/or association of Defendants with Plaintiff, or as to the origin, sponsorship, or

19  approval of Defendants' goods.

20  59.   On information and belief, by the aforesaid acts, Defendants' acts of

21  unfair competition have been willful, taken despite actual knowledge of Plaintiff's

22  rights in the WASHOUT PAN Mark, with the intent to cause, or with willful

23  blindness as to whether they would cause, confusion, mistake, and/or deception

24  among relevant consumers concerning Defendants' goods, and injury to Plaintiff's

25  reputation, goodwill, and sales.  On information and belief, HDS's delivery of an

26  engineering calculation packet detailing specifications of a Washout Out product

27  with an imitation pan demonstrates HDS's intent to cause confusion, mistake, and/or

28  deception among relevant consumers concerning Defendants' goods, and injury to

KING, HOLMES,
PATERNO &
SORIANO, LLP

5295.060/1489399.1                              13

SECOND AMENDED COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF

1   Plaintiff's reputation, goodwill, and sales.

2       60.   Defendants' conduct as alleged above has damaged and will continue
3   to damage WP, or is likely to damage WP.

4       61.   On information and belief, as a result of their conduct as alleged above,
5   Defendants has been unjustly enriched and have wrongfully profited.

6       62.   Under 15 U.S.C. § 1117, WP is entitled to recover the greater of its
7   actual damages or Defendants' profits from their acts constituting false designation
8   of origin and unfair competition.

9       63.   As a direct and proximate result of Defendants' tortious conduct as
10  alleged above, Plaintiff has been damaged in an amount which is not as yet fully
11  ascertained, but which Plaintiff believes exceeds $3,000,000.

12      64.   Under 15 U.S.C. § 1117, Defendants' conduct was malicious,
13  oppressive and fraudulent and undertaken with the express purpose and design of
14  willfully depriving Plaintiff of its rights.  Plaintiff is entitled to treble damages in an
15  amount exceeding $9,000,000 to punish and make an example of Defendants,
16  according to proof at trial, as well as WP's reasonable attorneys' fees.

17      65.   Defendants' conduct, unless permanently enjoined, will cause
18  irreparable harm to WP and to its goodwill and reputation.

19      66.   Unless restrained and enjoined by this Court, Defendants will continue
20  to engage in the wrongful conduct alleged above, customers are likely to continue to
21  be deceived and/or mistaken as to the true source, quality, sponsorship and
22  affiliation of Defendants' goods, Plaintiff's reputation and goodwill will be harmed
23  in ways difficult to monetarily quantify, adequately repair, and compensate, and
24  multiple suits will be required.

25                           **SECOND CAUSE OF ACTION**

26      **(Federal False Advertising; against all Defendants; 15 U.S.C. § 1125(a))**

27      67.   Plaintiff realleges and incorporates by reference the full text of all of
28  the foregoing numbered paragraphs as though fully set forth herein.

KING, HOLMES,
PATERNO &
SORIANO, LLP

5295.060/1489399.1              14
SECOND AMENDED COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF

68.    Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a), prohibits, inter alia, the use by a person of a false or misleading description of fact, or false or misleading representation of fact in connection with the offering for sale and sale of goods, which in commercial advertising or promotion, misrepresents the nature, characteristics, qualities, or geographic origin of his or her or another person's goods.

69.    HDS made false or misleading statements of fact about the imitation pans and lids by using WP's photographs, product numbers, product statistics, safety data, and engineering calculation packets of Washout Pan products in commercial advertisement or promotion for the imitation pans in interstate commerce, including in the Central District of California.

70.    On or about January 23, 2018, in a face-to-face conversation at the World of Concrete trade show at Las Vegas, Nevada, Mowers orally informed HDS employee Ian Freeman that WP that WP was terminating its sales relationship with HDS, and was no longer going to sell WP Washout Pans through HDS. Immediately thereafter, when HDS was no longer authorized to sell WP Pans, HDS created and posted on its website the following deceptive product links (the "Links"):

https://www.whitecap.com/shop/wc/p/brigade-72-x-72-x-14-concrete- **washout-pan**-for-concrete-pump-trucks-**727214pro**

https://www.whitecap.com/shop/wc/p/brigade-72-x-72-x-24-concrete-**washout-pan**-for-concrete-pump-trucks- **727224pro**

https://www.whitecap.com/shop/wc/p/brigade-50-x-96-x-14- concrete-**washout-pan**-for-concrete-pump-trucks-**509614pro**

https://www.whitecap.com/shop/wc/p/brigade-50-x-96-x-18-concrete-**washout-pan**-for-concrete-pump-trucks- **509618pro**

https://www.whitecap.com/shop/wc/p/brigade-60-x-48-x-14-concrete-**washout- pan**-for-concrete-pump-trucks-**444604814pro**

https://www.whitecap.com/shop/wc/p/**washoutpan**-watertight-steel-lid-72x72

https://www.whitecap.com/shop/wc/p/**washoutpan**-watertight-steel-lid-50x96

https://www.whitecap.com/shop/wc/p/brigade-**heavy-duty-**concrete- **washout-pan**-72x72x24

https://www.whitecap.com/shop/wc/p/brigade-**heavy-duty-**concrete-**washout-pan**-for-concrete-pump-trucks-72x72x14

71.     The Links included the Mark and WP Pan product numbers in order to deceive consumers so that they would believe that the Links were to WP Pans when, on information and belief, they were to HDS imitations, so that consumers would purchase the imitations believing that they were WP Pans, and to use the Marks and WP product numbers to lure consumers to purchase imitations.

72.     Commencing shortly after the termination of WP's seller agreement with HDS in February 2018, when HDS was no longer authorized to sell WP Pans, HDS paid Google Adwords, Google.com's online advertising platform, to divert to HDS' website listings of Imitation Pans consumers searching for WP products through search terms including the Mark and WP product identification numbers. HDS used the false and misleading Adwords, along with other indicia alleged herein, on its website, to deceive consumers into believing that they were being diverted to advertisements for, and then were being offered and were purchasing, authentic WP Pans when, in fact, they were being diverted to advertisements for and purchasing Imitation Pans.

73.     Compounding its deception, the HDS Links led to webpages that featured WP's photographs displaying authentic WP Pans in order to mislead consumers to believe that HDS was offering authentic WP Pans when, in fact, the containers sold in response to through those webpages were HDS' substandard imitations.  In addition, on information and belief, the webpages to which consumers were lured through HDS' placement of Adwords diverting consumers from WP to HDS and through the use of photographs of authentic WP Pans advertised the price of the HDS Pans at prices substantially lower than HDS actually charged consumers for the imitations.  The imitations also weighed substantially less

than the weight that HDS falsely advertised on its website and elsewhere, including the weight reflected in its online product listings and on webpage "shopping carts" before consumers paid for the imitations, in its webpage order confirmations, in its order shipment confirmations, and in its packing slips.

74.     In its nationwide retail outlets, in order falsely to market and promote the imitations HDS as authentic WP Pans, HDS displays the imitations with a permanently affixed steel identification tag designed to imitate the identification tag affixed to WP Pans, including the specific wording on the WP Tags, WP Pan product numbers, and the design of the WP Tags, including where the words and identification numbers are placed, the size and location of the tags, and the typeface of the tags.

75.     HDS further misled consumers in its promotion and marketing of the imitations by including with the imitations Concrete Tray Lifting Rating sheets that WP commissioned State of California Registered Civil Engineer firm Devco Engineering, Inc. to prepare for WP Pans, in order to cause consumers to believe that the imitations were certified as rated for the lifting capacities and other attributes reflected on the Rating sheets for WP Pans, which they were not.  A copy of the Rating sheet, which WP commissioned for its products, and which HDS used the promote and market the imitations, is attached hereto as Exhibit "G."

76.     In 2018 and 2019, HDS continued to distribute its 2017-2018 hard-copy catalogue containing photographs of WP Pans, WP product numbers, and the Mark, in order to lure consumers to purchase imitations believing that they are purchasing authentic WP Pans.  A true and correct copy of the HDS catalogue page containing photographs of WP Pans and WP product numbers is attached hereto as Exhibit "F."

77.     The above false or misleading statements of fact were and are likely to deceive buyers in a material way because they contain photographs, product numbers, the Mark, WP product numbers, rating sheets, safety data, weights,

strengths, and other information that are understood by consumers to pertain to the imitation concrete containment pans. The accuracy of this information is vital to the safe use of the pans and lids. WP is informed and believes that the Links and other false online advertising, marketing and promotion alleged above ceased or partially ceased at or about the time that WP filed the instant action. For example, WP is informed and believes that it stopped its deceptive Google Adword campaign at or about the time that it learned that WP filed the instant action.

78.     The above false or misleading statements of fact have caused or are likely to cause competitive or commercial injury to WP, including in the Central District of California, by misrepresenting that the imitation pans and lids and the Washout Pan products are identical or nearly identical when they are actually different.

79.     By the aforesaid acts, Defendants' acts of unfair competition have been willful by including information specific to the Washout Pan products, which HDS knew was specific to the Washout Pan products, to advertise the imitation pans and lids, with the intent to cause, or with willful blindness as to whether they would cause, deception in a material way among relevant consumers concerning Defendants' goods, and injury to WP's reputation, goodwill, and sales.

80.     HDS's conduct as alleged above has damaged and will continue to damage WP, or is likely to damage WP.

81.     On information and belief, as a result of its conduct as alleged above, HDS has been unjustly enriched and has wrongfully profited.

82.     Under 15 U.S.C. § 1117, WP is entitled to recover the greater of its actual damages or Defendants' profits from their acts constituting false designation of origin and unfair competition.

83.     As a direct and proximate result of Defendants' tortious conduct as alleged above, Plaintiff has been damaged in an amount which is not as yet fully ascertained, but which Plaintiff believes exceeds $3,000,000.

84.     Under 15 U.S.C. § 1117, Defendants' conduct was malicious, oppressive, and fraudulent and undertaken with the express purpose and design of willfully depriving Plaintiff of its rights.  Plaintiff is entitled to treble damages in an amount exceeding $9,000,000 to punish and make an example of Defendants, according to proof at trial, as well as WP's reasonable attorneys' fees.

85.     Defendants' conduct, unless permanently enjoined, will cause irreparable harm to WP and to its goodwill and reputation.

86.     Unless restrained and enjoined by this Court, Defendants will continue to engage in the wrongful conduct alleged above, customers are likely to continue to be deceived and/or mistaken as to the true source, quality, sponsorship and affiliation of Defendants' goods, Plaintiff's reputation and goodwill will be harmed in ways difficult to monetarily quantify, adequately repair, and compensate, and multiple suits will be required.

## THIRD CAUSE OF ACTION

### (Trade Dress Infringement; against all Defendants; 15 U.S.C. § 1125(a))

87.     Plaintiff realleges and incorporates by reference the full text of all of the foregoing numbered paragraphs as though fully set forth herein.

88.     Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a), prohibits, inter alia, the use by a person of any word, term, name, symbol, or device, or any combination thereof, or any false or misleading designation of origin or representation in connection with the offering for sale and sale of goods which is likely to cause confusion, mistake, or deception as to the affiliation, connection, or association of such person with another person, or which is likely to cause confusion, mistake, or deception as to the origin, source, sponsorship, or approval of such goods.

89.     The particularized combination of elements of the trade dress of WP Pans create a total effect on the non-functional, overall appearance of WP's pans in the PRO LINE that is inherently distinctive, such that consumers viewing those

1   elements in combination associate them with WP's Pans.  Those elements include
2   the WP PRO LINE dimensions and serial numbers (727214PRO 72" x 72" x 14"
3   PRO Pan, 727224PRO 72" x 72" x 24" PRO Pan, 509614PRO 50" x 96" x 14" PRO
4   Pan, 509618PRO 50" x 96" x 18" PRO Pan, 604814PRO 60" x 48" x 14" PRO); the
5   WP PRO LINE container colors; affixed metal identification plates displaying each
6   of the WP original serial numbers and specifications, written in a particular font that
7   WP chose and using particular wording and formats that WP created; the location on
8   the WP Pans where the identification plates are placed; the unique rolling floor of
9   the WP Pans; the fifth "D" Ring that is non-functional and unique to WP Pans; and
10  the Devco rating sheet shipped with WP Pans.

11      90.    HDS has advertised the imitation pans using the WASHOUT PAN
12  trademark and photographs, serial numbers, product statistics, safety data, and
13  engineering calculation packets of WP's Washout Pan products, to exploit WP's
14  trade dress to induce consumers to purchase HDS imitation pans.

15      91.    On information and belief, to the extent the overall appearance of WP's
16  pans in the PRO line has at any point not been inherently distinctive, WP's overall
17  appearance of the PRO line pans displayed throughout the US in connection with its
18  goods over time cause it, prior to HDS's infringing acts, to acquire secondary
19  meaning that served to distinguish the appearance of the PRO line pans in the minds
20  of relevant consumers as an indicator of the origin or source of the pans.

21      92.    On information and belief, WP has common law trade dress rights in
22  the overall appearance of the PRO line pans throughout California and the rest of the
23  US.

24      93.    On information and belief, Defendants have manufactured, or
25  instructed another party to manufacture, and sold concrete containment pans
26  imitating the appearance and trade dress of WP's PRO line of pans including the
27  WP PRO LINE dimensions and serial numbers (727214PRO 72" x 72" x 14" PRO
28  Pan, 727224PRO 72" x 72" x 24" PRO Pan, 509614PRO 50" x 96" x 14" PRO Pan,

KING, HOLMES,
PATERNO &
SORIANO, LLP

5295.060/1489399.1                                  20
SECOND AMENDED COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF

509618PRO 50" x 96" x 18" PRO Pan, 604814PRO 60" x 48" x 14" PRO); the WP PRO LINE container colors; the WP PRO LINE affixed metal identification plates displaying each of the WP original product numbers and specifications, written in a particular font that WP chose and using particular wording and formats that WP created; the location on the WP Pans where the identification plates are placed; the unique rolling floor of the WP PRO LINE Pans; the fifth "D" Ring that is non-functional and unique to WP PRO LINE Pans; and the Devco rating sheet shipped with WP Pans.

94.     Plaintiff and Defendants are business competitors as they both provide concrete containment pans in shared geographical regions, including throughout California, including the in Central District of California.

95.     HDS's conduct as alleged above has caused or is likely to cause confusion, and/or to cause mistake, or to deceive as to the affiliation, connection, and/or association of Defendants with Plaintiff, or as to the origin, sponsorship, or approval of Defendants' goods.

96.     By the aforesaid acts, Defendants' acts of unfair competition have been willful by manufacturing, or instructing another party to manufacture, and selling pans imitating the trade dress of WP's PRO line pans with the intent to cause, or with willful blindness as to whether they would cause, deception in a material way among relevant consumers concerning Defendants' goods, and injury to WP's reputation, goodwill, and sales.

97.     HDS's conduct as alleged above has damaged and will continue to damage WP, or is likely to damage WP.

98.     On information and belief, as a result of its conduct as alleged above, HDS has been unjustly enriched and has wrongfully profited.

99.     Under 15 U.S.C. § 1117, WP is entitled to recover the greater of its actual damages or Defendants' profits from their acts constituting false designation of origin and unfair competition.

100.   As a direct and proximate result of Defendants' tortious conduct as alleged above, Plaintiff has been damaged in an amount which is not as yet fully ascertained, but which Plaintiff believes exceeds $3,000,000.

101.   Under 15 U.S.C. § 1117, Defendants' conduct was malicious, oppressive and fraudulent and undertaken with the express purpose and design of willfully depriving Plaintiff of its rights. Plaintiff is entitled to treble damages in an amount exceeding $9,000,000 to punish and make an example of Defendants, according to proof at trial, as well as WP's reasonable attorneys' fees.

102.   Defendants' conduct, unless permanently enjoined, will cause irreparable harm to WP and to its goodwill and reputation.

103.   Unless restrained and enjoined by this Court, Defendants will continue to engage in the wrongful conduct alleged above, customers are likely to continue to be deceived and/or mistaken as to the true source, quality, sponsorship and affiliation of Defendants' goods, Plaintiff's reputation and goodwill will be harmed in ways difficult to monetarily quantify, adequately repair, and compensate, and multiple suits will be required.

## FIFTH CAUSE OF ACTION

### (California Unfair Competition; against all Defendants;

### Cal. Bus. & Prof. Code § 17200)

104.   Plaintiff realleges and incorporates by reference the full text of all of the foregoing numbered paragraphs as though fully set forth herein.

105.   California Business & Professions Code § 17200 defines unfair competition to include any unlawful, unfair, or fraudulent business act or practice and unfair, deceptive, untrue, or misleading advertising.

106.   On information and belief, HDS made false or misleading statements of fact about the imitation pans by using photographs, product numbers, product statistics, safety data, and engineering calculation packets of WP's Washout Pan products in commercial advertisement or promotion for the imitation pans and lids,

1   including in the Central District of California.

2   107.   HDS fraudulently made the false or misleading statements of fact,

3   knowing that the photographs, product numbers, product statistics, safety data, and

4   engineering calculation packets were specific to the Washout Pan products and were

5   not accurate of the imitation pans.

6   108.   HDS's conduct as alleged above has damaged and will continue to

7   damage WP.

8   109.   As a direct and proximate result of Defendants' tortious conduct as

9   alleged above, Plaintiff has been damaged in an amount which is not as yet fully

10   ascertained, but which Plaintiff believes exceeds $3,000,000.

11   110.   Defendants' conduct was malicious, oppressive and fraudulent and

12   undertaken with the express purpose and design of willfully depriving Plaintiff of its

13   rights.  Plaintiff is entitled under Cal. Civ. Code § 3294 to punitive damages in an

14   amount sufficient to punish and make an example of Defendants, according to proof

15   at trial.

16   ### SIXTH CAUSE OF ACTION

17   **(California Unfair Competition; against all Defendants;**

18   **Cal. Bus. & Prof. Code § 17500**

19   111.   Plaintiff realleges and incorporates by reference the full text of all of

20   the foregoing numbered paragraphs as though fully set forth herein.

21   112.   California Business & Professions Code § 17500 prohibits, inter alia,

22   anyone with intent to dispose of personal property from making public statements

23   concerning the personal property that are untrue or misleading, and which are

24   known or should be known to be untrue or misleading, and intending not to sell

25   personal property so advertised.

26   113.   On information and belief, HDS made false or misleading statements of

27   fact about the imitation pans by using photographs, product numbers, product

28   statistics, safety data, and engineering calculation packets of WP's Washout Pan

KING, HOLMES,
PATERNO &
SORIANO, LLP

5295.060/1489399.1                              23

SECOND AMENDED COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF

1 | products in commercial advertisement or promotion for the imitation pans and lids,
2 | including in the Central District of California.

3 | 114.   HDS knew, or should have known by the exercise of reasonable care,
4 | that the photographs, product numbers, product statistics, safety data, and
5 | engineering calculation packets were specific to the Washout Pan products and were
6 | not accurate of the imitation pans and lids.

7 | 115.   HDS's conduct as alleged above has damaged and will continue to
8 | damage WP.

9 | 116.   As a direct and proximate result of Defendants' tortious conduct as
10 | alleged above, Plaintiff has been damaged in an amount which is not as yet fully
11 | ascertained, but which Plaintiff believes exceeds $3,000,000.

12 | 117.   Defendants' conduct was malicious, oppressive and fraudulent and
13 | undertaken with the express purpose and design of willfully depriving Plaintiff of its
14 | rights.  Plaintiff is entitled under Cal. Civ. Code § 3294 to punitive damages in an
15 | amount sufficient to punish and make an example of Defendants, according to proof
16 | at trial.

17 | ### SEVENTH CAUSE OF ACTION

18 | **(Common Law Unfair Competition; against all Defendants)**

19 | 118.   Plaintiff realleges and incorporates by reference the full text of all of
20 | the foregoing numbered paragraphs as though fully set forth herein.

21 | 119.   On information and belief, HDS made false or misleading statements of
22 | fact about the imitation pans by using photographs, product numbers, product
23 | statistics, safety data, and engineering calculation packets of WP's Washout Pan
24 | products in commercial advertisement or promotion for the imitation pans and lids,
25 | including in the Central District of California.

26 | 120.   HDS fraudulently made the false or misleading statements of fact,
27 | knowing that the photographs, product numbers, product statistics, safety data, and
28 | engineering calculation packets were specific to the Washout Pan products and were

KING, HOLMES,
PATERNO &
SORIANO, LLP

5295.060/1489399.1

24

SECOND AMENDED COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF

1  not accurate of the imitation pans and lids.

2      121.   As a result of Defendants' conduct described above, WP has lost profits
3  and suffered additional harm to its reputation and goodwill, all in amounts to be
4  proven at trial.

5      122.   On information and belief, as a result of Defendants' conduct described
6  above, Defendants have unfairly acquired or retained revenues, in an amount to be
7  proven at trial. Plaintiff is entitled to an order that Defendants disgorge all such
8  unfairly acquired money.

9      123.   Defendants' conduct, unless permanently enjoined, will cause
10  irreparable harm to WP and to its goodwill and reputation.

11      124.   Defendants' conduct has caused, and will continue to cause, irreparable
12  harm to Plaintiff, harm for which Plaintiff has no adequate remedy at law. For those
13  reasons, Plaintiff is entitled to preliminary and permanent injunctive relief to prevent
14  further acts of unfair competition.

15      125.   As a direct and proximate result of Defendants' tortious conduct as
16  alleged above, Plaintiff has been damaged in an amount which is not as yet fully
17  ascertained, but which Plaintiff believes exceeds $3,000,000.

18      126.   Defendants' conduct was malicious, oppressive and fraudulent and
19  undertaken with the express purpose and design of willfully depriving Plaintiff of its
20  rights.  Plaintiff is entitled under Cal. Civ. Code § 3294 to punitive damages in an
21  amount sufficient to punish and make an example of Defendants, according to proof
22  at trial.

23              **EIGHTH CAUSE OF ACTION**

24      **(Common Law Trademark Infringement; against all Defendants)**

25      127.   Plaintiff realleges and incorporates by reference the full text of all of
26  the foregoing numbered paragraphs as though fully set forth herein.

27      128.   WP's Mark is an inherently distinctive, strong mark. WP has been
28  consistently using the Mark throughout the US as a source identifier for its goods

1   and has acquired common law trademark rights throughout California and the rest of
2   the US. On information and belief, to the extent its use in association with WP's
3   goods has at any point not been inherently distinctive, WP's use of the Mark over
4   time caused it, prior to Defendants' infringing acts, to acquire secondary meaning
5   that served to distinguish the mark in the minds of relevant consumers, as an
6   indicator of the origin or source of services associated with them.

7       129.   Defendants have used a mark containing Plaintiff's Mark in connection
8   with concrete containment pans and lids by using "Washout Pan" in the names of
9   the imitation pans and lids, such as 'Brigade Concrete Washout Pan 72" x 72" x
10  24"' and as "WASHOUT PANS" above listed imitation pans, including in the
11  Central District of California.

12      130.   Defendants have used a mark containing Plaintiff's Mark in connection
13  with a tool washout station by using "Washout Pan" in the name of the station
14  imitation the 300 Gallon Tool Washout Station that WP sold until around November
15  2016.

16      131.   Plaintiff and Defendants are business competitors as they both provide
17  concrete containment pans and lids in shared geographical regions, including
18  throughout California, including in the Central District of California.

19      132.   On information and belief, the relevant public is likely to identify
20  Defendants' concrete containment pans, lids, and tool station as those from Plaintiff,
21  or to believe or be confused as to whether Plaintiff has some connection or
22  association with Defendants' goods.

23      133.   Defendants' conduct as alleged above is unfair and unlawful under the
24  common law of the State of California.

25      134.   As a result of Defendants' conduct described above, WP has lost profits
26  and suffered additional harm to its reputation and goodwill.

27      135.   On information and belief, as a result of Defendants' conduct described
28  above, Defendants have unfairly acquired or retained revenues, in an amount to be

KING, HOLMES,
PATERNO &
SORIANO, LLP

SECOND AMENDED COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF

1  proven at trial. Plaintiff is entitled to an order that Defendants disgorge all such

2  unfairly acquired money.

3      136.  Defendants' conduct has caused, and will continue to cause, irreparable

4  harm to Plaintiff, harm for which Plaintiff has no adequate remedy at law.  For those

5  reasons, Plaintiff is entitled to preliminary and permanent injunctive relief to prevent

6  further acts of unfair competition.

7      137.  As a direct and proximate result of Defendants' tortious conduct as

8  alleged above, Plaintiff has been damaged in an amount which is not as yet fully

9  ascertained, but which Plaintiff believes exceeds $3,000,000.

10      138.  Defendants' conduct was malicious, oppressive and fraudulent and

11  undertaken with the express purpose and design of willfully depriving Plaintiff of its

12  rights.  Plaintiff is entitled under Cal. Civ. Code § 3294 to punitive damages in an

13  amount sufficient to punish and make an example of Defendants, according to proof

14  at trial.

15  **NINTH CAUSE OF ACTION**

16  **(Common Law Trade Dress Infringement; against all Defendants)**

17      139.  Plaintiff realleges and incorporates by reference the full text of all of

18  the foregoing numbered paragraphs as though fully set forth herein.

19      140.  The overall appearance of WP's pans in the PRO line, including the

20  WP PRO LINE dimensions and serial numbers (727214PRO 72" x 72" x 14" PRO

21  Pan, 727224PRO 72" x 72" x 24" PRO Pan, 509614PRO 50" x 96" x 14" PRO Pan,

22  509618PRO 50" x 96" x 18" PRO Pan, 604814PRO 60" x 48" x 14" PRO); the WP

23  PRO LINE container colors; affixed metal identification plates displaying each of

24  the WP original serial numbers and specifications, written in a particular font that

25  WP chose and using particular wording and formats that WP created; the location on

26  the WP Pans where the identification plates are placed; the unique rolling floor of

27  the WP Pans; the fifth "D" Ring that is non-functional and unique to WP Pans; and

28  the Devco rating sheet shipped with WP Pans, is inherently distinctive.

141.   On information and belief, to the extent the overall appearance of WP's pans in the PRO line has at any point not been inherently distinctive, WP's overall appearance of the PRO line pans displayed throughout the US in connection with its goods over time cause it, prior to HDS's infringing acts, to acquire secondary meaning that served to distinguish the appearance of the PRO line pans in the minds of relevant consumers as an indicator of the origin or source of the pans.

142.   On information and belief, WP has common law trade dress rights in the overall appearance of the PRO line pans throughout California and the rest of the US.

143.   On information and belief, Defendants have manufactured, or instructed another party to manufacture, and sold concrete containment pans imitating the appearance and trade dress of WP's PRO line of pans including the WP PRO LINE dimensions and serial numbers (727214PRO 72" x 72" x 14" PRO Pan, 727224PRO 72" x 72" x 24" PRO Pan, 509614PRO 50" x 96" x 14" PRO Pan, 509618PRO 50" x 96" x 18" PRO Pan, 604814PRO 60" x 48" x 14" PRO); the WP PRO LINE container colors; the WP PRO LINE affixed metal identification plates displaying each of the WP original product numbers and specifications, written in a particular font that WP chose and using particular wording and formats that WP created; the location on the WP Pans where the identification plates are placed; the unique rolling floor of the WP PRO LINE Pans; the fifth "D" Ring that is non-functional and unique to WP PRO LINE Pans; and the Devco rating sheet shipped with WP Pans.

144.   Plaintiff and Defendants are business competitors as they both provide concrete containment pans in shared geographical regions, including throughout California, including in the Central District of California.

145.   On information and belief, the relevant public is likely to identify Defendants' concrete containment pans as those from Plaintiff, or to believe or be confused as to whether Plaintiff has some connection or association with

1   Defendants' goods.

2       146.   Defendants' conduct as alleged above is unfair and unlawful under the

3   common law of the State of California.

4       147.   By the aforesaid acts, Defendants' acts of unfair competition have been

5   willful by manufacturing, or instructing another party to manufacture, and selling

6   pans imitating the trade dress of WP's PRO line pans with the intent to cause, or

7   with willful blindness as to whether they would cause, deception in a material way

8   among relevant consumers concerning Defendants' goods, and injury to WP's

9   reputation, goodwill, and sales.

10      148.   As a result of Defendants' conduct described above, WP has lost profits

11  and suffered additional harm to its reputation and goodwill.

12      149.   On information and belief, as a result of Defendants' conduct described

13  above, Defendants have unfairly acquired or retained revenues, in an amount to be

14  proven at trial. Plaintiff is entitled to an order that Defendants disgorge all such

15  unfairly acquired money.

16      150.   Defendants' conduct has caused, and will continue to cause, irreparable

17  harm to Plaintiff, harm for which Plaintiff has no adequate remedy at law.  For those

18  reasons, Plaintiff is entitled to preliminary and permanent injunctive relief to prevent

19  further acts of unfair competition.

20      151.   As a direct and proximate result of Defendants' tortious conduct as

21  alleged above, Plaintiff has been damaged in an amount which is not as yet fully

22  ascertained, but which Plaintiff believes exceeds $3,000,000.

23      152.   Defendants' conduct was malicious, oppressive and fraudulent and

24  undertaken with the express purpose and design of willfully depriving Plaintiff of its

25  rights.  Plaintiff is entitled under Cal. Civ. Code § 3294 to punitive damages in an

26  amount sufficient to punish and make an example of Defendants, according to proof

27  at trial.

28

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff prays for judgment against Defendant, jointly and severally, as follows:

1.      That the Court preliminarily and then permanently enjoin Defendants, and all of their officers, directors, agents, servants, employees and attorneys, and all other persons acting directly or indirectly in concert with Defendants, from using in commerce, in connection with the advertising, marketing, distribution, sale or offering for sale of any concrete containment pans, or related goods, the trademark WASHOUT PAN or any other confusingly similar mark or designation, or from otherwise infringing upon Plaintiff's trademark; from using in commerce, in connection with the advertising, marketing, distribution, sale or offering for sale of any concrete containment pans, or related goods, WP's trade dress for the PRO line pans or any other confusingly similar trade dress, or from otherwise infringing upon Plaintiff's trade dress; from unfairly competing with Plaintiff; from engaging in acts of false advertising; and from engaging in any other acts that tend to damage the value of Plaintiff's WASHOUT PAN Mark, trade dress, trade name, business reputation, and goodwill.

2.      That Plaintiff be awarded its damages and profits acquired by Defendants through Defendants' unlawful acts in an amount which is not as yet fully ascertained,  but which Plaintiff believes exceeds $3,000,000;

3.      That the Court increase and enhance by three times any award of damages and/or profits based on Defendants' willfulness in an amount exceeding $9,000,000 for Defendants' acts of federal passing off and federal false advertising under the Lanham Act;

4.      That the Court award exemplary damages for Defendants' acts of unfair competition under Cal. Bus. & Prof. Code, of unfair competition at common

/ / /
/ / /
/ / /

1   law, and of trademark and trade dress infringement at common law;

2         5.     For costs of suit and fees incurred herein; and

3         6.     For such other and further relief as the Court deems just and proper.

4

5   DATED:   August 26, 2019      KING, HOLMES, PATERNO & SORIANO, LLP

6

7

8                      By:        */s/ Stephen D. Rothschild*

9                                HENRY D. GRADSTEIN

10                           STEPHEN D. ROTHSCHILD

                              Attorneys for Plaintiff

11                           WASHOUTPAN.COM, LLC

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

KING, HOLMES, PATERNO & SORIANO, LLP

SECOND AMENDED COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF

1    **DEMAND FOR JURY TRIAL**

2    TO EACH PARTY AND TO THE COUNSEL OF RECORD FOR EACH

3    PARTY:

4    Plaintiff Washoutpan.com, LLC hereby demands a jury trial in the above-

5    entitled action on all issues triable to a jury.

6    DATED:   August 26, 2019        KING, HOLMES, PATERNO & SORIANO, LLP

7

8

9                              By:        /s/ Stephen D. Rothschild

10                                        HENRY D. GRADSTEIN
                                          STEPHEN D. ROTHSCHILD
11                                     Attorneys for Plaintiff
                                       WASHOUTPAN.COM, LLC
12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28